```
┌─────────────────────────────────────────────────────┐
│          NOT FOR PUBLICATION WITHOUT THE            │
│          APPROVAL OF THE APPELLATE DIVISION         │
│  This opinion shall not "constitute precedent or be │
│  binding upon any court."                           │
│  Although it is posted on the internet, this        │
│  opinion is binding only on the                     │
│  parties in the case and its use in other cases is  │
│  limited. R. 1:36-3.                                │
└─────────────────────────────────────────────────────┘
```

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1640-16T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

AMANDA S. GUSRANG,

    Defendant-Appellant.

_____

Argued April 18, 2018 — Decided July 12, 2018

Before Judges Alvarez and Geiger.

On appeal from Superior Court of New Jersey, Law Division, Burlington County, Indictment No. 14-12-1067.

Mark J. Molz argued the cause for appellant.

Alexis R. Agre, Assistant Prosecutor, argued the cause for respondent (Scott A. Coffina, Burlington County Prosecutor, attorney; Alexis R. Agre, of counsel and on the brief).

PER CURIAM

    A Law Division judge denied defendant Amanda Gusrang's motion to suppress the results of a warrantless blood sample taken to determine her blood alcohol content following a fatal motor vehicle

accident in which she was the responsible driver. In a written opinion, the judge found that exigent circumstances justified the warrantless search, thus making the results admissible. After the motion was denied, defendant entered a guilty plea to the single count of the indictment, which charged her with second-degree vehicular homicide, N.J.S.A. 2C:11-5(a). In accord with the plea agreement, the judge sentenced defendant in the third-degree range to three years in state prison, subject to a three-year period of parole ineligibility, restitution, and appropriate fines and penalties. Defendant now appeals the denial of the motion to suppress. We affirm.

We glean the facts from the testimony presented during the suppression hearing. At approximately 8:29 p.m. on December 6, 2013, during a rainy night, Pemberton Township Police Officer Thomas Lucas was on routine patrol, following a patrol car driven by Officer John Glass. The officers immediately pulled over upon seeing the headlights of stopped cars. The roadway was bordered by farm fields, which were very muddy from the rain. A silver Toyota Prius had rolled on the driver's side in a field next to the roadway. As they made their way to the car, the mud came up to the officers' shins. The only person in the vehicle was the driver, John Anderson, who lay still and face-down in the mud.

Fearing that Anderson would drown, Lucas broke the rear passenger window and lifted Glass into the car so he could attempt to move the victim. With the help of a bystander, Lucas was able to push the roof of the vehicle up enough to allow Glass to get Anderson's head out of the mud. However, they were unable to move Anderson out of the Prius, as one of his arms was pinned underneath. The accident location was miles away from the nearest hospital.

While the officers were attempting to extricate Anderson, a bystander cried out that there was a second vehicle down the road. Lucas left Glass with Anderson and drove to the other car, a Mercury Sable approximately 100 yards from the Prius. Defendant was standing outside the vehicle and did not appear to be seriously injured, although she had some blood on her t-shirt. She told Lucas that she was on the way home from work as a bartender at a nearby establishment. Lucas noticed the smell of alcohol in his vehicle once defendant was seated in the back of his patrol car, as he drove back to assist Glass.

Because of the muddy conditions, efforts to remove Anderson from the mud required several rescue and first responder teams, an ambulance, paramedics, the Pemberton Township Fire Department, and the Fort Dix Fire Department. Seven out of the eight on-duty Pemberton Township officers responded to the scene of the accident,

in addition to two off-duty officers and one Pemberton Borough Officer. Lucas and others described the scene as "chaotic."

Lucas told Sergeant Michael Giebel that defendant smelled of alcohol. Defendant was still in the back seat of Lucas's patrol car when Officer John Hall moved it to make room for a fire truck. When Hall got out of the car, Giebel told him to take defendant to the ambulance and escort her to the hospital for a blood draw. The recommendation actually came from Officer Steven Price, the traffic safety officer Giebel called for assistance in investigating the collision. Price gave the instruction upon being informed that defendant smelled of alcohol.

Hall and defendant arrived at the hospital at 9:17 p.m. Another officer brought a blood draw kit retrieved from the Pemberton Township police station. Defendant was carried into an exam room on a stretcher. Hall told Erin Mosely, the registered nurse who was treating defendant, that defendant was in custody for a DUI, and that he would ask defendant for consent to do a blood draw. According to Hall, defendant "began saying . . . she's under arrest for DUI because she only had two shots . . . something to the effect that she's only had two shots. She said that numerous times."

Hall read the consent form to defendant as she was being treated for an injury to her left arm. Defendant then "said go

ahead, something to the effect of go ahead . . . and pushed her [right] arm out."  When Mosely finished with the hospital's bloodwork, she drew the samples for Hall, who placed them into the blood kit.  As soon as Mosely was available, he had her complete the blood extraction form.

Hall testified that he did not obtain a search warrant because he was concerned about the length of time it would take to obtain one, and the possibility that the alcohol in defendant's blood would dissipate in the interim.  Hall did not get defendant's signature on the consent form once she agreed to the blood draw because there were at least two or three people attending to her, and he did not want to interfere with her medical care.

When Hall reentered defendant's room to have her the sign the consent form, she said "I'm not signing shit."  Hall then read defendant her Miranda[1] rights before asking her the questions on the Driving Under the Influence Questionnaire.  Defendant told Hall that she had only consumed two shots of Jameson whiskey at her workplace between 7:00 p.m. and 7:30 p.m., and that she had eaten dinner at 5:30 p.m.  Defendant's blood alcohol reading, approximately one hour after the incident, was .22 percent.

---

[1]  Miranda v. Arizona, 384 U.S. 436 (1966).

Hall contacted Price regarding defendant's refusal to sign the consent form. He then called the Burlington County Prosecutor's Office, and was instructed to obtain a taped statement from Mosely. This was done, but the tape was lost. Defendant was released to her grandfather at around 11:18 p.m. that night.

For the judge, the key fact was the nature of the accident. Because of the precarious way Anderson was trapped in his vehicle, officers from multiple agencies were needed in the attempt to get him out of the mud. The investigation required the attention of all the Pemberton Township police officers, leaving only one on-duty officer available for patrol. The investigation lasted over four hours, and the roadway remained closed until almost 1:00 a.m.

Defendant raises the following points on appeal:

> POINT I
> THERE WERE NO EXIGENT CIRCUMSTANCES TO JUSTIFY A WARRANTLESS SEARCH
>
> POINT IA
> MISSOURI V. MCNEELY
>
> POINT IB
> NEW JERSEY APPELLATE DIVISION ANALYSIS OF MCNEELY REQUIRES THE WARRANTLESS BLOOD DRAW TO BE SUPPRESSED
>
> POINT II
> APPELLATE DIVISION DECISION STATE V. DONNA JONES IS INAPPLICABLE
>
> POINT III
> NO EVIDENCE OF KNOWING AND VOLUNTARY CONSENT

On appeal, we defer to the trial court's findings of fact where supported by "sufficient evidence in the record." State v. Hubbard, 222 N.J. 249, 262 (2015) (citations omitted). Findings of fact are set aside only when clearly mistaken. Id. at 262. Our review of the trial court's legal conclusions, however, is always plenary. State v. Hathaway, 222 N.J. 453, 467 (2015) (citation omitted).

The United States Constitution and the New Jersey State Constitution both guarantee the right to be free from unreasonable searches and seizures. U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7. The seizure of blood from a suspect is considered a search under both constitutions. Schmerber v. California, 384 U.S. 757 (1966); State v. Ravotto, 169 N.J. 227 (2001). Consistent with the above constitutional provisions, "police officers must obtain a warrant from a neutral judicial officer before searching a person's property, unless the search falls within one of the recognized exceptions to the warrant requirement." State v. Diloreto, 180 N.J. 264, 275 (2004) (citation omitted). One such exception is the presence of exigent circumstances. State v. Johnson, 193 N.J. 528 (2008).

In Schmerber v. California, the Supreme Court upheld a DWI suspect's warrantless blood test where the officer "might

reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened 'the destruction of evidence.'" 384 U.S. at 770 (quoting Preston v. United States, 376 U.S. 364, 367 (1964)). The Supreme Court later clarified that "in drunk-driving investigations, the natural dissipation of alcohol in the bloodstream does not constitute an exigency in every case sufficient to justify conducting a blood test without a warrant." Missouri v. McNeely, 569 U.S. 141, 165 (2013).

Accordingly, the New Jersey Supreme Court has held that "potential dissipation of the evidence may be given substantial weight as a factor to be considered in the totality of the circumstances." State v. Adkins, 221 N.J. 300, 303 (2015). In making that decision, the Court noted:

> We are constrained to adhere to the McNeely Court's totality-of-the-circumstances approach notwithstanding that our case law, like that of many sister states, had provided de facto, if not de jure, support for law enforcement to believe that alcohol dissipation in and of itself supported a finding of exigency for a warrantless search of bodily fluids in suspected driving-under-the-influence cases.
>
> [Ibid.]

"Our courts are tasked with focusing 'on the objective exigency of the circumstances' that officers face in each specific, unique instance." State v. Zalcberg, 232 N.J. 335, 352 (2018) (quoting Adkins, 221 N.J. at 317).

Defendant argues that the judge erred in finding exigent circumstances to justify a warrantless search, claiming that State v. Jones, 441 N.J. Super. 317 (App. Div. 2015) (hereafter Jones II), aff'g State v. Jones, 437 N.J. Super. 68 (App. Div. 2014) (hereafter Jones I) is inapplicable.

Jones I stated:

> The fact that the Supreme Court rejected a per se exigency rule in McNeely should not be misinterpreted as a retreat from its recognition that the dissipation of alcohol in the blood merits considerable weight in a totality of the circumstances analysis. It must be emphasized that both the Missouri Supreme Court and the United States Supreme Court described the facts in McNeely as "'unquestionably a routine DWI case' in which no factors other than the natural dissipation of blood-alcohol suggested that there was an emergency." McNeely, [569] U.S. at [147] . . . .
>
> [Jones I, 437 N.J. Super. at 78.]

We went on to distinguish McNeely from the circumstances in Jones I: "[t]here was no accident; no injured defendant who needed to be extricated from [their] heavily damaged car; no other injured person who had to be transported to the hospital; no concentration

of disabled cars and emergency vehicles at a busy intersection; and no police investigation beyond the DWI arrest." Ibid.

As the Court further clarified in Zalcberg, in each case there must be a close analysis of the specific circumstances, including the obligations and practical burdens the individual accident imposes on the responding police officers. 232 N.J. at 351. As in Zalcberg, here the officers' failure to apply for a warrant was attributable to, as the judge described it, the "complexity of the situation and the reasonable allocation of limited police resources -- not a lack of emergent circumstances, as argued by defendant."

That the officer who obtained the blood sample without first obtaining a warrant did so after waiting in the hospital for some time for defendant to be treated does not support defendant's position. Applying the Zalcberg analysis to the situation, the legitimate exigency is not undermined by this delay.

Defendant needed treatment, a reasonable first priority. She herself contributed to the difficulties Hall faced. Instructed to obtain a blood draw, he obtained defendant's initial consent, and after he waited for her treatment to be completed, was confronted with her change of heart. That night, the department and related agencies focused on the ultimately fruitless effort

to remove the victim before he expired, and then to remove his body, investigate, and clear the roadway. Pemberton Township is a small department, and the incident left a largely rural area short on police coverage for hours. Examining the totality of the circumstances, the dissipation of alcohol in the blood created an exigency which legally justified the warrantless search.

The trial judge correctly focused on the "objective exigency" of the circumstances that the officers faced here. Zalcberg, 232 N.J. at 352; Adkins, 221 N.J. at 317. He concluded that "[t]here is no question that the responding Pemberton Township officers were confronted with an emergency situation," explaining the many compounding variables. His factual findings were based upon "sufficient credible evidence in the record" and are entitled to deference. Elders, 192 N.J. at 243; Johnson, 42 N.J. 146, 161 (1964).

## II.

Defendant contends that consent cannot operate as an exception to the warrant requirement in this case. We do not reach that issue, as we find that the exigencies presented by this incident on that particular night in this particular locale created an objective exigency that rendered correct the trial judge's decision to deny the motion to suppress.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11

A-1640-16T4