**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5704-17T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

CHIWUEZE E. EBERE,

    Defendant-Appellant.

_____

> Argued March 10, 2020 – Decided May 11, 2020
>
> Before Judges Fisher and Gilson.
>
> On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 15-11-1351.
>
> Peter Thomas Blum, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Peter Thomas Blum, of counsel and on the brief).
>
> Amanda Gerilyn Schwartz, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Amanda Gerilyn Schwartz, of counsel and on the brief).

PER CURIAM

Defendant Chiwueze Ebere was involved in a motor vehicle accident that caused the death of another person.  Following the denial of defendant's motion to suppress the results from a blood draw that showed he was intoxicated, he pled guilty to second-degree vehicular homicide, N.J.S.A. 2C:11-5, and driving while intoxicated (DWI), N.J.S.A. 39:4-50.  Defendant was sentenced to eight years in prison with periods of parole ineligibility and parole supervision as prescribed by the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.

Defendant appeals, challenging his convictions and sentence.  He argues that the results from the blood draw should be suppressed because they were the fruit of an illegal search.  Alternatively, he contends that he should be resentenced because the court did not find and apply mitigating factor seven. We reject these arguments and affirm.

I.

Three police officers testified at the suppression hearing: Officer Daniel Bradley, Detective Joseph Chonka, and Detective Donald Heck. We derive the relevant facts from their testimony and the other evidence at the hearing.

At approximately 11:30 p.m. on June 27, 2015, a three-car accident occurred at the intersection of Route 1 and Plainfield Avenue in Edison. Defendant was driving a Jeep Cherokee, which ran a red light and crashed into

an Acura. The Acura then hit a Honda, which had been waiting at a light at the intersection. Each car contained a driver and a passenger. The passenger in the Acura was severely injured and died as a result of her injuries.

Officer Bradley was one of the first responding officers to arrive at the scene of the accident. When he approached defendant he observed that defendant's eyes were "glassed over," his gait was unsteady, and his breath smelled of alcohol. Defendant complained of injuries and he and his passenger were transported to a hospital.

Thereafter, Officer Bradley, together with another police officer, went to the hospital. At the hospital, defendant's blood was collected at 12:43 a.m. at the request of the other officer. That officer did not testify at the hearing because he had passed away.

At 1:05 a.m. defendant signed a consent form for the blood draw that had already occurred. Officer Bradley could not recall the specifics of the consent for the blood draw. In that regard, Officer Bradley testified that defendant was causing a scene by sometimes lying down and sometimes sitting up and shouting.

Detective Heck arrived at the accident scene at approximately 12:45 a.m. Detective Heck was the fatal crash detective for the Middlesex County

3

Prosecutor's Office and when he arrived, he was the lead investigator. After investigating the scene and interviewing witnesses, Detective Heck went to the hospital sometime after 2:25 a.m. At the hospital, Detective Heck spoke with a nurse who had treated defendant and the passenger from defendant's car. The nurse told Heck that she "smelled the odor of alcohol coming from [defendant's] breath." The passenger informed Heck that she had been with defendant before they drove, and defendant had been drinking alcohol and smoking marijuana earlier in the evening.

Detective Heck was informed that defendant's blood had previously been drawn as authorized by his consent. Detective Heck, however, decided to apply for a warrant to draw defendant's blood a second time. He explained that he was concerned about the consent for the first blood draw because defendant may have been under the influence of both alcohol and drugs. Accordingly, Detective Heck contacted an assistant prosecutor to arrange an application for a warrant to draw defendant's blood a second time. At the time of the application, Detective Heck did not know the results of the first blood draw analysis.

The warrant application was made telephonically at approximately 3:45 a.m. and was recorded. Detective Heck testified and informed the judge about the information he collected from the accident scene, other officers, the nurse,

and the passenger. The judge was also informed that defendant had consented to a blood draw, though the record is unclear as to whether the judge was aware that defendant's blood had already been drawn once. The assistant prosecutor, however, explained that he still wanted to proceed with the warrant application because he was concerned defendant was not of sound mind to consent.

Following the testimony by Detective Heck, the assistant prosecutor submitted that there was probable cause to take a blood draw. The warrant judge then approved the warrant stating:

> Alright . . . based on [Detective Heck's] testimony regarding the accident and what the nurse indicated to you and what the officer at the scene indicated to you about smelling alcohol . . . and particularly because the suspect consented in the event, but even if he hadn't consented, based on this evidence I would grant the application to do a blood draw particularly since there is [a] fatality with respect to this accident so it's granted.

After considering the testimony at the suppression hearing, the motion judge issued an order on May 3, 2018, suppressing the results of the first blood draw, but allowing the results from the second draw. The judge supported that ruling with a written opinion.

The motion judge found all the officers to be credible. In particular, he credited Officer Bradley's testimony that he could not recall the circumstances

surrounding the consent for the first blood draw. The judge suppressed the first blood draw because he found that the State failed to prove the consent was valid and there were no exigent circumstances justifying a warrantless blood draw.

In contrast, the motion judge found that the second blood draw had been conducted lawfully in accordance with a warrant. The judge found that the warrant judge determined that there was probable cause supporting the search and the motion judge independently concluded that the warrant application established probable cause. The motion judge also rejected defendant's argument that the second blood draw should be suppressed as "poisonous fruit" from the first blood draw. In that regard, the motion judge found that the State did not know the results of the first blood draw when it applied for the warrant for the second blood draw.

As already noted, defendant thereafter pled guilty to second-degree vehicular homicide and DWI. In exchange, the State agreed to dismiss the additional charges against defendant, which included first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a)(1); and third-degree causing death with a suspended or revoked license, N.J.S.A. 2C:40-22(a).

In accordance with the plea agreement, defendant was sentenced to an aggregate prison term of eight years. Specifically, on the second-degree

6

vehicular homicide conviction, defendant was sentenced to eight years in prison subject to NERA. His driving privileges were also revoked for life in accordance with N.J.S.A. 2C:11-5(b)(4). On the conviction for DWI, defendant was sentenced to a concurrent 180 days of incarceration because it was his third DWI conviction.

## II.

Defendant appeals and presents two arguments, which he articulates as follows:

> POINT I - THE HEARING COURT SHOULD HAVE SUPPRESSED THE SECOND BLOOD DRAW FROM EBERE ALONG WITH THE ILLEGAL FIRST BLOOD DRAW BECAUSE THE PROSECUTOR FAILED TO PROVE, AS REQUIRED BY THE INDEPENDENT SOURCE DOCTRINE, THAT THE FIRST DRAW WAS NOT THE PRODUCT OF FLAGRANT POLICE MISCONDUCT. U.S. CONST. AMENDS. IV, XIV; N.J. CONST. ART. I, PARA. 7.
>
> POINT II - A RESENTENCING SHOULD OCCUR BECAUSE THE COURT IMPROPERLY FAILED TO FIND MITIGATING FACTOR SEVEN EVEN THOUGH EBERE HAD NO PRIOR CRIMINAL RECORD.

A.    The Blood Draws

We employ a deferential standard in reviewing a trial court's ruling on a motion to suppress. State v. Zalcberg, 232 N.J. 335, 344 (2018). The trial

7

court's factual and credibility findings will be set aside "only when [the] court's findings of fact are clearly mistaken . . . [and] the interests of justice require the reviewing court to examine the record, make findings of fact, and apply the governing law." Ibid. (alterations in original) (quoting State v. Hubbard, 222 N.J. 249, 262-63 (2015)). We use a de novo standard to review legal issues. Ibid.

Both the United States Constitution and the New Jersey Constitution guarantee freedom from unreasonable searches and seizures by the government. U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7. Taking a "blood sample for the purpose of alcohol-content analysis constitutes a search" under the Fourth Amendment. Zalcberg, 232 N.J. at 345 (citing Schmerber v. California, 384 U.S. 757 (1966)).

A warrant for a search can be issued when there is probable cause to believe that the search will produce evidence of a crime. State v. Smith, 212 N.J. 365, 388 (2012) (quoting State v. Marshall, 199 N.J. 602, 610 (2009)). Rule 3:5-3(b) permits a judge to issue a warrant telephonically. Moreover, since December 1, 2013, that rule does not require exigent circumstances for a telephonic warrant. Notice to the Bar: Telephonic Requests for Search Warrants

for Blood Tests in Driving While Intoxicated (DWI) Cases (Missouri V. Mcneely) – Rule Relaxation, 214 N.J.L.J. 794 (Nov. 25, 2013).

The focus of this appeal is on the second blood draw. That draw was taken pursuant to a warrant. The motion judge found that there was probable cause for that warrant and, having conducted a de novo review, we agree. See State v. Handy, 206 N.J. 39, 44-45 (2011). During the telephonic application, Detective Heck testified to the discoveries of his investigation, the observations of defendant, the statement of the nurse, and the statement of the passenger in defendant's car. Those facts constituted probable cause to believe that defendant was under the influence when he caused a fatal automobile accident. While the warrant judge made reference to defendant's prior consent, she was clear in stating that she was issuing the warrant without regard to the consent.

On this appeal defendant argues that the second blood draw was compromised by the first blood draw and that the independent source doctrine cannot sanitize that constitutional violation. Specifically, defendant argues that the State failed to prove that the first blood draw was not the product of flagrant police misconduct. We reject this argument for two reasons.

First, the independent source doctrine was not triggered in this matter. When the State made its application for the warrant it did not possess the results

from the first blood draw and thus did not have any compromised information. Just as importantly, the warrant judge issued the warrant based on information that was not derived from the first blood draw.

Second, even if we were to consider the independent source doctrine, there was no violation of that doctrine. The independent source doctrine "allows for the introduction of evidence tainted by unlawful police conduct if the information leading to discovery of the evidence is independent of the previous unlawful conduct." State v. Camey, 239 N.J. 282, 310 (2019) (citing Nix v. Williams, 467 U.S. 431, 443 (1984)). Consequently, the independent source doctrine allows for the "admission of evidence that was discovered wholly independently from the constitutional violation." State v. Shaw, 237 N.J. 588, 621 (2019) (citation omitted).

To satisfy the independent source doctrine the State must prove three elements by clear and convincing evidence: (1) "probable cause existed to conduct the challenged search without the unlawfully obtained information"; (2) "the police would have sought a warrant without the tainted knowledge or evidence that they previously had acquired or viewed"; and (3) "the initial impermissible search was not the product of flagrant police misconduct." Camey, 239 N.J. at 310 (quoting State v. Holland, 176 N.J. 344, 360-62 (2003)).

10

The facts at the hearing demonstrated that all the elements of the independent source doctrine were established. We have already pointed out that there was probable cause independent of the first blood draw. Detective Heck then testified that he sought the warrant because he was concerned about defendant's state of mind and his ability to provide consent. The motion judge found that testimony to be credible, and that finding satisfies the second element of the independent source doctrine. Finally, there is no evidence of flagrant police misconduct. Officer Bradley testified that he could not recall the circumstances of defendant providing the consent. The motion judge found that testimony to be credible; thus, there was no flagrant police misconduct.

Defendant argues that the State had to prove that there was no flagrant police misconduct by clear and convincing evidence. Defendant then argues that Officer Bradley's lack of memory demonstrates that the State failed to meet that burden. That argument misconstrues the application of the independent source doctrine to the facts of this case. The first blood draw was not suppressed because it was the result of illegal conduct by the police. Instead, it was suppressed because the State could not establish that the consent was given in a valid manner. There is no evidence suggesting that the consent was the product of flagrant police misconduct.

A-5704-17T3

B.    The Sentence

Defendant argues that this matter should be remanded for resentencing because the sentencing court erred in rejecting mitigating factor seven. A defendant is accorded mitigating factor seven if he or she has no prior criminal history or otherwise "led a law-abiding life for a substantial period of time." N.J.S.A. 2C:44-1(b)(7).

In sentencing defendant, the court found aggravating factor three – the risk that defendant will commit another offense, N.J.S.A. 2C:44-1(a)(3); and nine – the need for deterrence, N.J.S.A. 2C:44-1(a)(9). The court rejected defense counsel's argument for mitigating factor seven. The court noted that defendant had no prior indictable convictions, but found that he had a record in municipal court and in family court. In that regard, the record establishes that defendant had a prior municipal court conviction for drinking in public. He also had three domestic violence restraining orders entered against him and he had violated one of those orders. The record also shows that defendant had two prior convictions for DWI.

As already noted, mitigating factor seven is accorded when the defendant does not have a prior criminal history "or has led a law-abiding life for a substantial period of time before the commission of the present offense."

12

N.J.S.A. 2C:44-1(b)(7). Consequently, we have consistently recognized that municipal court convictions can be a basis for rejecting mitigating factor seven. See State v. Buckner, 437 N.J. Super. 8, 38 (App. Div. 2014) (holding that the defendant's "five municipal convictions" in the ten years preceding his most recent offense demonstrated that he had not led a law-abiding life for a substantial period of time, though the defendant had prior "indictable offenses" as well).

In short, our review establishes that the sentencing court did not err, and the sentence was within the guidelines, the aggravating and lack of mitigating factors found were based on "competent and credible evidence in the record," and the sentence does not shock our judicial conscience. See State v. Fuentes, 217 N.J. 57, 70 (2014) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)). Accordingly, we affirm the sentence.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5704-17T3