STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. HOWARD J. GOLDBERG, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued December 3, 1986—Decided December 23, 1986.

402

Before Judges KING, HAVEY and MUIR, Jr.

*John L. Pollok,* admitted *pro hac vice,* argued the cause on behalf of appellant (*Paul L. Potenza,* local counsel, and *Hoffman, Pollok & Gasthalter,* New York counsel, attorneys; *Paul Potenza, John Pollok* and *Charles L. Weintraub,* of counsel and on the brief).

*Gerard Boruch,* Deputy Attorney General, argued the cause on behalf of respondent (*W. Cary Edwards,* Attorney General, attorney; *Gerard Boruch* on the brief).

The opinion of the court was delivered by

MUIR, Jr., J.A.D.

This appeal challenges the denial of defendant's motion to suppress. It follows a negotiated plea wherein defendant pled guilty to possession with intent to distribute three and three-quarter ounces (approximately 106 grams) of cocaine, which included 45 to 55 grams of pure, free base cocaine. *N.J.S.A.* 24:21–19b(2) prescribes imprisonment up to life for possession of an ounce or more of cocaine which includes 3.5 grams of pure free base of the drug.

Acting within terms of the plea negotiation, which limited defendant's prison exposure to five years imprisonment with two years parole ineligibility, the sentencing judge imposed a four-year sentence with eighteen months parole ineligibility.

Defendant moved before the trial court to suppress the 106 grams of cocaine and 100 grams of marijuana seized pursuant to a search warrant issued by Judge Wolin of the Superior Court.

The judge issued the warrant after taking testimony from James Doherty, an Elizabeth Narcotics detective. Law enforcement officials made the application on an emergent basis.

In his motion to suppress, defendant argued false information contained in the detective's testimony before Judge Wolin and lack of probable cause in the information provided required either suppression of the evidence or a hearing pursuant to

*Franks v. Delaware,* 438 *U.S.* 154, 98 *S.Ct.* 2674, 57 *L.Ed.*2d 667 (1978), and *State v. Howery,* 80 *N.J.* 563 (1979), *cert. den. Howery v. N.J.,* 444 *U.S.* 994, 100 *S.Ct.* 527, 62 *L.Ed.*2d 424 (1979). The State, while conceding the detective misinformed Judge Wolin as to the police having information from two informants rather than one, argued that regardless of the errant information the testimony provided probable cause to support the search warrant.

Judge Beglin, excluding the errant information, concluded the detective's testimony provided sufficient evidence of reliability of the informant and sufficient basis for informant's knowledge to support a finding of probable cause. In doing so, he concluded that whether he applied the standards of *Aguilar v. Texas,* 378 *U.S.* 108, 84 *S.Ct.* 1509, 12 *L.Ed.*2d 723 (1964), and *Spinelli v. United States,* 393 *U.S.* 410, 89 *S.Ct.* 584, 21 *L.Ed.* 2d 637 (1969), or the standards of *Illinois v. Gates,* 462 *U.S.* 213, 103 *S.Ct.* 2317, 76 *L.Ed.*2d 527 (1983), the testimony supported a probable cause determination. Thus, he concluded the *Franks* and *Howery* issues raised did not have to be resolved.

Defendant, on appeal, essentially reasserts the arguments raised before the trial court, but in greater depth. Since we conclude probable cause existed, exclusive of the allegedly false testimony, we affirm.

Detective Doherty presented the only testimony in support of the emergent application for the search warrant. A police officer for 21 years, with 18 years in narcotics law enforcement, Doherty testified narcotics law enforcement officers received information from two informants. Doherty related the first information came on April 10, 1984, in the form of an anonymous phone call. At that time, the caller stated defendant and a Steven Gapell, both employed at Levitz Furniture Store on Route 1 in Woodbridge, were distributing large quantities of cocaine. The caller gave descriptions of vehicles owned by defendant and Gapell and gave the license plate numbers. He also stated defendant resided in Elizabeth.

Doherty further testified that during the week of May 4, 1984, another informant contacted and was interviewed by another narcotics law enforcement officer. In fact, as the State stipulates, this informant was the same as the April 10, 1984 caller.

Doherty testified the informant had a seven–year–old suspended proceeding record under *N.J.S.A.* 24:21–27 for possession of C.D.S. He had contacted the police with the hope he could get defendant off the street. He described himself as being very addicted to cocaine and admitted that he purchased cocaine from defendant on frequent occasions, both at defendant's apartment in Elizabeth and in other places. He stated he could no longer afford the cocaine. He described the defendant as an aggressive salesman. He also stated his willpower had reached a crossroad and that he felt by getting defendant off the street it might help him break the habit. He described defendant as a purveyor of large amounts of cocaine, particularly fractions of kilos, such as an eighth of a kilo.

The informant gave a detailed description of defendant's apartment. He noted the street address, that it was a brick building, that defendant's apartment was C–5 on the third floor and that defendant habitually kept cocaine in the drawer of a desk in the den of the apartment.

He gave a detailed description of the defendant. He provided defendant's height, weight, hair color and the fact that his hair was curly. Further, he described defendant as having a large, hooked nose.

Additionally, he related that during the week of May 4, 1984, he was in defendant's apartment and defendant showed him three large glassine bags containing cocaine.

Detective Doherty went to the apartment address in Elizabeth and confirmed its description and the fact that defendant's name appeared on the mail box for apartment C–5. He further noted the informant did not reside in Elizabeth.

■ Under *Franks v. Delaware* and *State v. Howery*, before a defendant is entitled to an evidentiary hearing to challenge the veracity of the contents of a police officer's affidavit or, as here, testimony given in support of a search warrant, it must be demonstrated, among other things, that the allegedly false statements were essential to support a probable cause determination. Thus, if probable cause exists without the purportedly errant information, defendant is not entitled to the hearing. *Franks v. Delaware*, 438 *U.S.* at 172, 98 *S.Ct.* at 2684–85, 57 *L.Ed.*2d at 682; *State v. Howery*, 80 *N.J.* at 568.

Probable cause has escaped precise definition by legal scholars. As stated by the late Justice Francis in *State v. Kasabucki*, 52 *N.J.* 110 (1968):

> ... although incapable of precise definition, the term [probable cause] has been construed to signify less evidence than would be required to establish guilt of the crime for which the warrant is sought. [Citation omitted]. It means something more than 'raw unsupported suspicion.' It is a suspicion of guilt that is well grounded; a reasonable basis for a belief that a crime has been or is being committed. [*Id.* at 116; citations omitted].

Also, it is a practical, non-technical concept that must be looked at in a common-sense way and may be grounded in hearsay evidence. *See State v. Kasabucki*, 52 *N.J.* at 117.

■ The evidence, however, must show the reliability *or* credibility of the informant and the basis of his knowledge. *Spinelli v. United States*, 393 *U.S.* at 412, 89 *S.Ct.* at 586–87, 21 *L.Ed.*2d at 641–42. Reliability can be adequately established if the informant includes a statement against his penal interest. *United States v. Harris*, 403 *U.S.* 573, 583, 91 *S.Ct.* 2075, 2081–82, 29 *L.Ed.*2d 723, 734 (1971); *State v. Ebron*, 61 *N.J.* 207, 213 (1972).

■ Here, the informant who gave his name to the police admitted to buying cocaine on several occasions from the defendant. He made these admissions which were against his penal interest. He made them with the hope it would start him on the road to freedom from the ravages of cocaine usage.

We are in a time when cocaine addiction is on the verge of epidemic proportion, and the public is extensively aware of the

devastation created by it. Consequently, when a cocaine user voluntarily turns in his supplier to the police in the hope of shaking his reliance on the drug, and in doing so admits to his own criminal conduct, such evidence sharply increases the degree of reliability needed for the issuance of a search warrant.

As former Chief Justice Burger stated in *United States v. Harris*, when discussing admissions of criminal conduct by an informant providing evidence to the police relied upon for issuance of a search warrant:

Common sense in the important daily affairs of life would induce a prudent and disinterested observer to credit these statements. People do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions. [403 *U.S.* at 583, 91 *S.Ct.* at 2082, 29 *L.Ed.*2d at 734].

Doherty's testimony also recited the personal observations of the informant. It explained how the informant came by his information. It provided precise detail of the apartment in a town where the informant did not live, the location of the apartment and the location of the desk where defendant kept significant amounts of cocaine.

Doherty, to the extent possible, confirmed the information given by checking out the apartment. He also established the informant had a record for possessing C.D.S.

Defendant, however, suggests there should have been greater confirmation. He argues the police should have made a controlled buy. Such an argument evades logic and common sense. When the police officer is told that defendant has three large envelopes of cocaine and that he deals in large volume sales, if the officer waits to make a controlled buy, the evidence may be gone before the buy could be effectuated. Additionally, the informant, while willing to volunteer information, may be unwilling to participate in the controlled buy.

Furthermore, the facts which support probable cause must be closely related in time to the issuance of the warrant. *Sgro v. United States*, 287 *U.S.* 206, 210, 53 *S.Ct.* 138, 140, 77 *L.Ed.* 260, 263 (1932). Doherty had to act with exigency to have current facts to support the application for a search warrant.

Pursuing other means of information did not constitute practical common sense for any reasonable law enforcement officer.

Once Judge Wolin issued the search warrant, his probable cause finding was entitled to substantial deference. *State v. Kasabucki,* 52 *N.J.* at 117. Even assuming that the legitimacy of the affidavit is partially in doubt, "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *State v. Perry,* 59 *N.J.* 383, 394 (1971) quoting *United States v. Ventresca,* 380 *U.S.* 102, 109, 85 *S.Ct.* 741, 746, 13 *L.Ed.*2d 684, 698 (1965). Furthermore, the action of Judge Wolin as an independent judicial official, lessened the severity of any intrusion upon interests protected by the Fourth Amendment or by Article 1, ¶ 7 of the New Jersey Constitution.

Consequently, we conclude that a common-sense evaluation of the evidence presented by the testimony of Officer Doherty, exclusive of the alleged false statements, constituted reliable information and demonstrated the basis of the informant's knowledge sufficiently to constitute probable cause for the issuance of the search warrant. Therefore, no hearing under *Franks* or *Howery* was required.

Affirmed.