**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1196-22

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

RICARDO MOISE, a/k/a
RICARDO B. MOISE,

     Defendant-Appellant.

_____

Submitted August 13, 2024 – Decided August 20, 2024

Before Judges Firko and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Indictment Nos. 15-10-1147, 21-08-0578, and Accusation No. 22-07-0157.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Stefan Van Jura, Assistant Deputy Public Defender, of counsel and on the brief).

Theresa L. Hilton, Acting Mercer County Prosecutor, attorney for respondent (Erin C. McGlynn, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Ricardo Moise appeals from an October 18, 2016 Law Division order denying his motion to suppress without first conducting a Franks[1] hearing based on factual inaccuracies he contends were contained in the affidavit in support of the search warrants issued. Having considered the record in light of the applicable law, we reject defendant's argument and affirm.

I.

We begin our discussion with the material facts distilled from Mercer County Detective Jessica Plumeri's June 2, 2015 thirty-two-page affidavit filed in support of the search warrants that led to the seizure of heroin and weapons from residences and vehicles utilized by defendant. Following a four-month narcotics investigation involving heroin distribution in Trenton, in February 2015, Plumeri obtained information from a "reliable" confidential informant (CI) regarding the illegal distribution of heroin by an individual known to the CI as "Jay," who was later identified as defendant.

Plumeri applied for search warrants for: the persons of defendant and co-defendant Troy Singletary; the premises of 88 Evans Avenue and 320 Ardmore Avenue, including a detached garage, in Trenton; 43 Western Avenue, apartment number four, in Ewing Township (defendant's mother's residence);

---

[1] Franks v. Delaware, 438 U.S. 154 (1978).

and four vehicles—a black Jeep Grand Cherokee, a Dodge Magnum, an Audi Q7, and a Mercury Sable.

In her affidavit in support of the search warrants, Plumeri stated that the CI worked for the Mercer County Prosecutor's Office, Special Investigations Unit in the past, and provided information leading to the arrest of individuals for drug offenses. According to Plumeri's affidavit, the CI advised her that defendant was selling "large quantities of heroin" and using a residence in Levittown, Pennsylvania, his mother's residence, and the garage at 320 Ardmore Avenue to "stash" his heroin and firearms. Plumeri stated the CI described defendant as a "black male," five-feet-nine inches tall, and weighing approximately 160 pounds.

The CI gave Plumeri the cell phone number defendant used to communicate with his customers to arrange drug transactions. The CI told Plumeri that defendant used "runners" to obtain heroin from his stash locations who delivered the heroin to customers at defendant's direction. The CI advised Plumeri that the CI purchased heroin from defendant during the past year.

Plumeri also stated that the CI indicated to her that defendant used vehicles, which are equipped with "traps"—secret compartments built into the vehicles—to stash heroin and firearms. The CI identified the Jeep Grand

3

Cherokee and Dodge Magnum as the vehicles defendant used for his drug dealings. The Jeep Grand Cherokee is registered to defendant's mother at the Ewing address and the Dodge Magnum is registered to an individual at defendant's Levittown address.

In February 2015, Plumeri obtained a photograph of defendant from the New Jersey Motor Vehicle Commission and showed it to the CI, who made a positive identification of defendant. That month, Plumeri and the CI set up a controlled heroin purchase from defendant. Mobile surveillance showed defendant driving the Jeep Grand Cherokee from 88 Evans Avenue to the driver's side window of the CI's vehicle and handing the CI an object. Defendant returned to 88 Evans Avenue. The CI turned over the suspected heroin to Plumeri, which field tested positive for heroin.

With assistance from the CI, Plumeri arranged to purchase heroin from defendant. The CI provided Plumeri with defendant's cell phone number. On February 27, 2015, Plumeri sent a text message to defendant about meeting to purchase a brick of heroin and confirming the price was $180. Defendant responded to her by text message that the price was $200, but he would "let [her] go dis time."

A-1196-22

Plumeri met defendant, recognized him, and purchased the heroin. The transaction was videotaped. During the next three months, Plumeri made six more undercover heroin purchases from defendant, as detailed in her affidavit. According to Plumeri, defendant either drove the Jeep Grand Cherokee or the Dodge Magnum when the drug transactions occurred. Her investigation revealed defendant lived at 43 Western Avenue in Ewing.

On October 14, 2015, defendant was charged under indictment number 15-10-1147 with two counts of third-degree possession of a controlled dangerous substance ("CDS"), N.J.S.A. 2C:35-10(a)(1) (counts one and thirteen); one count of second-degree possession of a CDS with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and (b)(2) (count two); one count of third-degree possession of a CDS with intent to distribute on or near school property, N.J.S.A. 2C:35-7 and -5(a)(1) and (b)(2) (count three); one count of second-degree possession of a CDS with intent to distribute on or near a public facility, N.J.S.A. 2C:35-7.1(a) and -5(a)(1) and (b)(2) (count four); one count of second-degree possession of a firearm while committing a CDS offense, N.J.S.A. 2C:39-4.1(a) (count five); two counts of second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b) (counts six and seven); one count of fourth-degree possession of hollow nose bullets, N.J.S.A. 2C:39-3(f)(1) (count eight); one

A-1196-22

count of fourth-degree possession of a large capacity ammunition magazine, N.J.S.A. 2C:39-3(j) (count nine); two counts of fourth-degree possession of a defaced firearm, N.J.S.A. 2C:39-3(d) (counts ten and eleven); one count of third-degree theft by receiving stolen property, N.J.S.A. 2C:20-7 (count twelve); one count of third-degree possession of a CDS with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and (b)(3) (count fourteen); one count of third-degree possession of a CDS with intent to distribute on or near school property, N.J.S.A. 2C:35-7 and -5(a)(1) and (b)(3) (count fifteen); one count of second-degree possession of a CDS with intent to distribute on or near a public facility, N.J.S.A. 2C:35-7.1(a) and -5(a)(1) and (b)(3) (count sixteen); one count of fourth-degree possession of a CDS, N.J.S.A. 2C:35-10(a)(3) (count seventeen); one count of third-degree possession of a CDS with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and (b)(11) (count eighteen); one count of third-degree possession of a CDS with intent to distribute on or near school property, N.J.S.A. 2C:35-7 and -5(a)(1) and (b)(11) (count nineteen); one count of second-degree possession of a CDS with intent to distribute on or near a public facility, N.J.S.A. 2C:35-7.1(a) and -5(a)(1) and (b)(11) (count twenty); seven counts of third-degree distribution of a CDS, N.J.S.A. 2C:35-5(a)(1) and (b)(3) (counts twenty-two, twenty-three, twenty-four, twenty-seven, twenty-eight, thirty-one, and thirty-

6

four); three counts of third-degree distribution of CDS on or near school property, N.J.S.A. 2C:35-7 and -5(a)(1) and (b)(3) (counts twenty-five, twenty-nine, and thirty-two); three counts of second-degree distribution of a CDS on or near a public facility, N.J.S.A. 2C:35-7.1 and -5(a)(1) and (b)(3) (counts twenty-six, thirty, and thirty-three); and one count of second-degree certain person not to possess a firearm, N.J.S.A. 2C:39-7(b)(1) (count thirty-five).[2]

Defendant moved to suppress physical evidence and for a Franks hearing pertaining to indictment number 15-10-1147. The court denied the motion in its October 18, 2016 order and accompanying oral opinion. The court reasoned that the discrepancies in defendant's height and weight were minor and insignificant because "the difference between five-feet-seven and five-feet-nine could be determined . . . [by] shoes one wears," and the twenty-pound weight discrepancy was "subjective" and can "vary depending on when the person is viewed." Regarding defendant's date of birth, the court noted it was only misstated once in Plumeri's affidavit and was accurately stated in the search warrants.

In support of its findings, the court highlighted that Plumeri showed the CI a known photo of defendant, and the CI identified that individual as the man the CI "definitely" purchased drugs from. Therefore, the court found there was

---

[2] Count twenty-one does not apply to this defendant.

no material falsity surrounding defendant's identification. In addition, the court noted that Plumeri represented she personally purchased heroin from defendant during her undercover investigation.

The court emphasized that Plumeri conducted approximately "seven or eight undercover buys herself, hand-to-hand transactions with . . . defendant." The court found it was "more than likely" that the warrant-issuing judge "gave great weight to the affiant"—Plumeri—who personally conducted the stated transactions with defendant "as opposed to relying solely upon the reliability of the [CI]."

The court also rejected defendant's argument that the CI's reliability was not established or demonstrated. Relying on Plumeri's affidavit, the court determined she represented the CI "worked for the Mercer County Prosecutor's Office Special Investigation[s] Unit in the past and ha[d] provided information that has led to the arrest of individuals for [CDS] offenses." In addition, the court noted that the CI provided "reliable" information in the instant case based "on personal knowledge."

The court highlighted Plumeri attesting to the CI purchased heroin from defendant "on several occasions during the last year," and that the CI observed defendant "in possession of a handgun, specifically in his waistband on several

occasions." During a controlled buy in February 2015 between defendant and Plumeri, officers observed defendant operating a black Jeep Grand Cherokee exiting and returning to 88 Evans Avenue. The court noted there was "ample probable cause to connect defendant" to the addresses listed in the search warrants. The court concluded the CI's information was therefore "corroborated."

The court also concluded a <u>Franks</u> hearing was unnecessary as defendant did not establish that the statements in Plumeri's affidavit were willfully false, intentionally misleading, or made in reckless disregard of the truth. The court rejected defendant's assertion that he did not use the stated properties as stash houses or sell drugs from there because these claims were stated in defendant's counsel's certification in support of the motion. The court determined defense counsel did not have "firsthand knowledge" of the facts and only provided "conclusionary statements" in support of defendant's contentions.

The court found defendant only presented "sheer conjecture" in support of his motion for a <u>Franks</u> hearing and did not supply any "reliable statements from witnesses attesting to firsthand knowledge" of the facts. In addition, the court noted defendant did not supply an affidavit or clarification indicating his height or weight. A memorializing order was entered.

A-1196-22

On August 6, 2021, defendant was charged under indictment number 21-08-0578 with one count of second-degree conspiracy to possess a CDS with intent to distribute, N.J.S.A. 2C:5-2(a)(1), 2C:35-5(a)(1), (b)(1), and (b)(4) (count fifty-seven).[3] Defendant was also charged under accusation number 22-07-0157 with one count of third-degree financial facilitation of criminal activity, N.J.S.A. 2C:21-25(c).

At his plea hearing, defendant pled guilty to count two of indictment number 15-10-1147, count fifty-seven of indictment number 21-08-0578, and the one count charged in accusation number 22-07-0157. The court considered the applicable aggravating and mitigating factors and sentenced defendant to an aggregate ten-year term of imprisonment, which was four years less than the State recommended in accordance with the plea agreement. The remaining counts of the indictments as to defendant were dismissed. This appeal followed.

On appeal, defendant raises the following sole contention for our consideration:

> THE MATTER SHOULD BE REMANDED FOR AN EVIDENTIARY FRANKS HEARING BECAUSE DEFENDANT HAS MADE A SUBSTANTIAL PRELIMINARY SHOWING THAT THE AFFIDAVIT IN SUPPORT OF THE SEARCH WARRANT

---

[3] The other counts of indictment number 21-08-0578 charged co-defendants and are not germane to this appeal.

CONTAINED MATERIAL FALSITIES NECESSARY
TO THE FINDING OF PROBABLE CAUSE.

II.

Defendant maintains the police improperly searched him, the properties, and vehicles, contrary to the Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution. In support, defendant argues Plumeri failed to include sufficient corroborative facts to establish the CI's reliability and the basis of the CI's knowledge.

Specifically, defendant contends Plumeri's affidavit contained "numerous factual inaccuracies" that "undermine" the finding of probable cause to justify the searches conducted. Defendant asserts the CI's description of him was incorrect because the CI described defendant as "[five-feet-nine inches] and 160 pounds" when he is actually "[five-feet-seven inches] and 140 pounds." Defendant argues the CI claimed defendant was known as "Jay," but he does not use that name.

Defendant contends that Plumeri incorrectly attested to his date of birth in her affidavit. Defendant also maintains Plumeri's affidavit mistakenly describes the alleged transactions with the CI. According to defendant, he never used the addresses set forth in Plumeri's affidavit as "stash houses," never sold

drugs from these locations, and never invited individuals to these locations. Defendant contends the court erred in denying his motion for a <u>Franks</u> hearing.

We employ a deferential standard when reviewing a trial court's ruling on a motion to suppress. <u>State v. Zalcberg</u>, 232 N.J. 335, 344 (2018). The trial court's factual and credibility findings will be set aside "only when [the] court's findings of fact are clearly mistaken . . . [and] the interests of justice require the reviewing court to examine the record, make findings of fact, and apply the governing law." <u>Ibid.</u> (alterations in original) (quoting <u>State v. Hubbard</u>, 222 N.J. 249, 262-63 (2015)). That deferential standard is extended to encompass "factual findings based on . . . documentary evidence." <u>State v. S.S.</u>, 229 N.J. 360, 381 (2017). We use a de novo standard to review legal issues. <u>Id.</u> at 380. As our Court stressed in <u>State v. Andrew</u>, "reviewing courts 'should pay substantial deference' to judicial findings of probable cause in search warrant applications." 243 N.J. 447, 464 (2020) (quoting <u>State v. Kasabucki</u>, 52 N.J. 110, 117 (1968)).

"A search that is executed pursuant to a warrant is 'presumptively valid,' and a defendant challenging the issuance of that warrant has the burden of proof to establish a lack of probable cause 'or that the search was otherwise unreasonable.'" <u>State v. Boone</u>, 232 N.J. 417, 427 (2017) (quoting <u>State v.</u>

Watts, 223 N.J. 503, 513-14 (2015)). "[A]n appellate court's role is not to determine anew whether there was probable cause for issuance of [a] warrant, but rather, whether there is evidence to support the finding made by the warrant-issuing judge." State v. Chippero, 201 N.J. 14, 20-21 (2009). Reviewing courts "accord substantial deference to the discretionary determination resulting in the issuance of [a] warrant." State v. Marshall, 123 N.J. 1, 72 (1991).

"Courts consider the 'totality of the circumstances' and should sustain the validity of a search only if the finding of probable cause relies on adequate facts." Boone, 232 N.J. at 427 (quoting State v. Jones, 179 N.J. 377, 388-89 (2004)). "[T]he probable cause determination must be . . . based on the information contained within the four corners of the supporting affidavit, as supplemented by sworn testimony before the issuing judge that is recorded contemporaneously." Ibid. (alteration in original) (quoting State v. Marshall, 199 N.J. 602, 611 (2009)).

As noted, defendant challenges the search of the locations and vehicles resulting in the seizure of heroin and weapons based on his claim that Plumeri's affidavit supporting the search warrants failed to demonstrate the CI's reliability and basis of the CI's knowledge. We disagree.

Information related by informants may constitute a basis for probable cause, provided sufficient support for crediting that information is presented. State v. Sullivan, 169 N.J. 204, 212 (2001); State v. Smith, 155 N.J. 83, 92 (1998). "'[T]he issuing court must consider the "veracity and basis of knowledge" of the informant[,]'" State v. Keyes, 184 N.J. 541, 555 (2005) (quoting Jones, 179 N.J. at 389), as well as law enforcement's ability to corroborate the tip, id. at 556.

Under the first factor, although not conclusive, an informant's past reliability can be probative of veracity. Sullivan, 169 N.J. at 213. Under the second factor, we consider whether the informant can demonstrate that he or she received the information in a reliable way, and in the absence of such disclosure, whether the informant's tip is sufficiently detailed. Ibid.

If there is a deficiency as to either factor, such deficiency may be overcome by a "strong showing as to the other, or by some other indicia of reliability." State v. Zutic, 155 N.J. 103, 111 (1998). Even "if the informant's tip fails to demonstrate sufficient veracity or basis of knowledge, a search warrant issued on the basis of the tip may still pass muster if other facts included in a supporting [police] affidavit justify a finding of probable cause." Jones, 179 N.J. at 390.

14

Our Supreme Court has stated that "past instances of reliability may establish the informant's veracity." State v. Ebron, 61 N.J. 207, 212-13 (1972). Indeed, an informant's veracity can be supported by information that the informant has "proven reliable in several investigations (with the information he [or she] supplied)." State v. Novembrino, 105 N.J. 95, 123 (1987). Our Court has cautioned, however, that "[a] few past instances of reliability do not conclusively establish an informant's reliability." Smith, 155 N.J. at 94.

A CI's "basis of knowledge is relevant to a determination that the information was obtained in a reliable way." Ibid. The CI must provide sufficient details such that the warrant-issuing judge knows he or she is "relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." Novembrino, 105 N.J. at 113 (quoting Spinelli v. U.S., 393 U.S. 410, 416 (1969)). Where police lack such detailed information however, "[i]ndependent corroboration is necessary to ratify the informant's veracity and validate the truthfulness of the tip." Smith, 155 N.J. at 95. Moreover, "[b]ecause the information contained in a tip is hearsay, police corroboration of that information 'is an essential part of the determination of probable cause.'" Sullivan, 169 N.J. at 213.

15

"[R]elevant [corroborating] factors may include controlled drug purchases performed on the basis of the informative tip, the positive test results of narcotics obtained . . . [,] the experience of the officer who submitted the supporting affidavit, and the suspect's criminal history." Jones, 179 N.J. at 390-91. While no one corroborating fact conclusively establishes probable cause, a successful controlled buy "typically will be persuasive evidence in establishing probable cause." Keyes, 184 N.J. at 556 (quoting Jones, 179 N.J. at 392). If the police have conducted a successful controlled buy, our Supreme Court has held "even one additional circumstance might suffice, in the totality of the circumstances, to demonstrate probable cause." Jones, 179 N.J. at 392.

Where, as here, a defendant challenges the veracity of a search warrant affidavit, a Franks hearing is required only "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause[.]" Franks, 438 U.S. at 155-56. The defendant "must allege 'deliberate falsehood or reckless disregard for the truth,' pointing out with specificity the portions of the warrant that are claimed to be untrue." State v. Howery, 80 N.J. 563, 567 (1979) (quoting Franks, 438 U.S. at 171).

Further, a defendant's allegations should be supported by affidavits or other reliable statements; "[a]llegations of negligence or innocent mistake are insufficient." State v. Broom-Smith, 406 N.J. Super. 228, 241 (App. Div. 2009) (quoting Franks, 438 U.S. at 171). The allegations "must be proved by a preponderance of the evidence." Howery, 80 N.J. at 568.

A defendant must also demonstrate that absent the alleged false statements, the search warrant lacks sufficient facts to establish probable cause. Ibid. ("[T]he misstatements claimed to be false must be material to the extent that when they are excised from the affidavit, that document no longer contains facts sufficient to establish probable cause."); see also State v. Goldberg, 214 N.J. Super. 401, 406 (App. Div. 1986) ("[B]efore a defendant is entitled to an evidentiary hearing to challenge the veracity of the contents of a police officer's affidavit or . . . testimony given in support of a search warrant, it must be demonstrated, among other things, that the allegedly false statements were essential to support a probable cause determination."); State v. Desir, 245 N.J. 179, 196 (2021) (citing Franks, 438 U.S. at 155-56). If a search warrant affidavit contains sufficient facts establishing probable cause even when the alleged false statements are excised, a Franks hearing is not required. Franks, 438 U.S. at 171-72.

Here, the court correctly concluded a _Franks_ hearing was not required. The court's finding that the discrepancy in defendant's physical characteristics—height and weight—in Plumeri's affidavit from the description provided by the CI were not significantly different and did not rise to the level of "materially false information." Defendant does not challenge the reliability or veracity of the CI on appeal. Moreover, the court concluded Plumeri showed the CI a photograph of defendant, and the CI confirmed defendant was the person he had purchased CDS from. Thus, defendant offered no proof that any discrepancy in the affidavit was "deliberate" or the result of a "reckless disregard for the truth," despite his arguments to the contrary. _Howery_, 80 N.J. at 567 (quoting _Franks_, 438 U.S. at 171).

Nor was a _Franks_ hearing required because page three of the affidavit misstated defendant's date of birth. The court duly pointed out the State conceded the error, which was limited to that one page. In any event, the court correctly concluded the one mistake regarding defendant's date of birth was immaterial and did not rise to the level of material falsity because there was still ample probable cause to support the issuance of the search warrants. See _Howery_, 80 N.J. at 568; _Franks_, 438 U.S. at 171-72.

We are satisfied there was no credible evidence presented to support defendant's argument that he was entitled to a <u>Franks</u> hearing. Defendant only submitted a four-page certification from his counsel in support of his <u>Franks</u> motion, which was not based on first-hand personal knowledge, and failed to establish a substantial preliminary showing of falsity. <u>See</u> <u>id</u>. at 172.

As the court aptly noted, defendant's allegations were "bald, self-serving denials," unsupported by an offer of proof and "reliable statements by witnesses." <u>Howery</u>, 80 N.J. at 567 (citing <u>Franks</u>, 438 U.S. at 172). Thus, we conclude the court did not abuse its discretion in denying defendant's motion for a <u>Franks</u> hearing, the search warrants were properly issued, and the fruits of the ensuing searches need not be suppressed.

To the extent we have not specifically addressed any remaining arguments, it is because we find them to be without sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1196-22